IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ESSOCIATE, INC.,<br><br>       Plaintiff,<br><br>   v.<br><br>AZOOGLE.COM, INC., and EPIC MEDIA GROUP, INC.,<br><br>       Defendants. | **CASE NO. 3:11-cv-00727-bbc** |

**MEMORANDUM IN SUPPORT OF ESSOCIATE, INC.'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

**I.    INTRODUCTION**

Plaintiff Essociate recently learned that defendant Epic Media Group, Inc. ("Epic") is apparently refusing to pay its debts and directing its clients to pay another entity called "Kinetic Social" instead of Epic. Based on the facts set forth below, Essociate reasonably believes that Epic's former management formed Social Assets, LLC, which does business as "Kinetic Social", one month after this lawsuit was filed— and transferred assets to Social Assets—for the purpose of avoiding Epic's debts to current creditors as well as Epic's liability to potential creditors such as Essociate.

Consequently, Essociate respectfully requests the Court grant it leave to file a First Amended Complaint in the above lawsuit. In its original complaint, Essociate alleges that Azoogle.com, Inc. and Epic Media Group, Inc. have infringed and continue to infringe U.S. Patent No. 6,804,660 entitled "System Method and Article of Manufacture for Internet Based Affiliate Pooling" (the " '660 Patent").

Essociate now moves to add Social Assets, LLC as a defendant. On information and belief, Social Assets is a successor entity to and/or alter ego of Epic and bears

liability for Epic's infringement of the '660 Patent. Essociate seeks to add those claims and claims for fraudulent transfer against Epic and Social Assets.

The proposed amendment will not cause undue delay or prejudice. Essociate respectfully requests this Court grant it leave under Fed. R. Civ. P. 15(a) to file the proposed First Amended Complaint which is attached as Exhibit A to Essociate's Motion for Leave to Amend.

### I.    FACTS

**A.    Kinetic Social is the successor in interest to Epic and the transferee of Epic's assets outside the ordinary course of business.**

According to its own press release, "Kinetic Social was founded in early 2010 by a group of experienced internet advertising professionals to solve the challenges of attribution and effective data-rich analytics in a social milieu." (Declaration of Derek Linke in Support of Motion for Leave to File Amended Complaint ("Linke Decl.") ¶ 2, Ex. A.) Kinetic Social's website explains that Kinetic began "under the [Epic] umbrella" in 2010. (*Id.* at ¶ 3, Ex. B.)

Kinetic Social did not become a separate entity from Epic until much later, after this lawsuit was filed. Social Assets LLC was formed in Delaware in November 2011—one month after this lawsuit was filed against Epic. (Linke Decl. ¶ 4, Ex. C.) Social Assets is the registrant of the domain name <<kineticsocial.com>> and the owner of a trademark application for KINETIC SOCIAL. (Linke Decl. ¶¶ 5, 6, Exs. D and E.)

This lawsuit was filed in October 2011. (*See* Dkt. No. 1). The following month, Social Assets was formed and began doing business as "Kinetic Social", which was previously an internal division of Epic. (*See* Linke Decl., Ex. A.)

Kinetic Social is now operated by Epic's former management:

- Don Mathis was Epic's President and CEO. He is now Kinetic Social's CEO. He joined Kinetic Social in 2011. (Linke Decl. at ¶ 7, Ex. F.)

- Rick Okin was Epic's CIO and now fills the same role at Kinetic Social. He joined Kinetic Social in October 2011. (*Id.*, Ex. G.)

- Stephen McDermott was Epic's Senior Account Executive. He is now the Director of Social Media at Kinetic Social. Interestingly, he remained at Epic until November 2011 even though he joined Kinetic Social a month earlier. (*Id.*, Ex. H.)

- Paul Biondi was the Manager of Creative Services at Epic and took over the same role at Kinetic Social in October 2011. (*Id.*, Ex. I.)

- Charlie Nowaczek was Epic's COO and is now the COO at Kinetic Social. (*Id.*, Ex. J.)

- Nate Armstrong was Epic's Vice President of Sales and is now Kinetic Social's Director of Sales. (*Id.*, Ex. K.)

On June 6, 2012—Essociate learned from the online publication Performance Industry Insider that Epic is refusing to pay its debts and directing its clients to pay Kinetic Social instead of Epic:

> [A]lmost a year ago the executives knew that the company was eventually going to go out of business. They were so certain the company was in trouble that all the executives of the company left Epic Media Group, took the profitable social media assets and turned it into another company called Kinetic Social. Same CEO, same clients, same executive staff.
>
> ...according to former clients of Epic, Kinetic Social is now working for them and billing them under the new name. Yes, you heard that – they are billing former Epic clients, according to an insider I spoke with, and telling them to pay Kinetic Social instead of Epic.

(Linke Decl. at ¶ 8, Ex. L.) A debt workout specialist recently issued a letter on Epic's behalf detailing Epic's plans to confront its massive debts without filing for bankruptcy. (*Id.* at ¶ 9, Ex. M.) Another recent Performance Industry Insider article reported that Epic's board of directors has been discussing filing for bankruptcy. (*Id.* at ¶ 10, Ex. N.)

3

The day after the June 6, 2012 Performance Industry Insider article was published—on June 7, 2012—Epic's counsel moved to withdraw from this case because "the defendants have not paid any of the fees owed to Godfrey & Kahn in this matter." (Dkt. No. 33.) Godfrey & Kahn had represented Epic since the outset of this case, when it filed Epic's Answer, Affirmative Defenses, and Counterclaims. (Dkt. No. 6.)

Epic's financial difficulties continued to mount. The week after the June 6, 2012 Performance Industry Insider article was published—on June 15, 2012—the United States District Court for the Eastern District of Michigan granted a $ 3.5 million judgment against Epic's wholly-owned subsidiary Connexus Corporation, as well as the related entities Firstlook, Inc., and Navigation Catalyst Systems, Inc. (Linke Decl. ¶¶ 11–12, Ex. O and Ex. P at ¶¶ 2-3.)

Based on these facts, Essociate infers that Epic's management has long been aware of Epic's financial difficulties and that Epic has transferred and continues to transfer its assets to Kinetic Social outside the ordinary course of business, for the purpose of avoiding Epic's debts to current creditors as well as Epic's liability to potential creditors such as Essociate.

**B.      This case is still in its early stages.**

Since this case was filed in October 2011, the parties have exchanged written discovery requests and responses. (Linke Decl. at ¶ 13.) There have been no depositions. (*Id.* at ¶ 13.)

Essociate did schedule a Rule 30(b)(6) deposition of Epic. (Linke Decl. at ¶ 14, Ex. Q.) Essociate served the deposition notice on Epic's counsel—including its current counsel Godfrey & Kahn—on June 5, 2012, two days before Godfrey & Kahn moved to withdraw because Epic had not paid it. (*Id.*) The deposition was scheduled for July 6,

4

2012. (*Id.*) Epic did not appear for the deposition—although Godfrey & Kahn re-appeared as Epic's counsel the day before the deposition, after a brief one-month absence. (Linke Decl. at ¶ 15; Dkt. No. 40.) As indicated in an email from Essociate's counsel to Epic's counsel:

> We attempted to negotiate mutually-acceptable dates with Epic's former primary litigation counsel for over three months. Epic's counsel was unresponsive. Finally, on June 5, 2012, Essociate was forced to unilaterally select dates and serve deposition notices, including the notice of Rule 30(b)(6) deposition set for tomorrow.
>
> That deposition notice was properly served on Epic's counsel, including your law firm. We never received any objection, formal or informal, to that deposition notice before your firm and Epic's other counsel moved to withdraw. The correspondence Epic's general counsel sent the Court indicated that Epic's representation issues would be resolved by June 29 (*see* Dkt. # 37) but by that date Epic was still not represented by counsel.

(Linke Decl. at ¶ 16, Ex. R.)

Epic and Essociate have tentatively planned depositions for the last week of September and the first week of October. (Linke Decl. at ¶ 17.) The Court recently granted a request by Epic, which Essociate agreed to, to extend all deadlines in this case by about four months due to Epic's "acute financial difficulties." (*See* Dkt. Nos. 43 and 46).

## II.   ARGUMENT

Leave to amend a complaint "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether a plaintiff satisfies this standard, courts consider a number of factors, including whether there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Bausch v. Stryker Corp.*, 630

F.3d 546, 562, (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007), quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). In this case, Essociate has prosecuted the case with diligence—so there is no undue delay, bad faith or dilatory motive on its part. Nor will the amendment case undue prejudice or be futile.

**A.      Essociate has been diligent.**

One of the *Bausch* factors is whether there has been "undue delay [or] bad faith or dilatory motive on the part of the movant." *Bausch*, 630 F.3d at 562. In this case, Essociate moved to amend its complaint shortly after it learned of Epic's fraudulent asset transfers to Social Assets—and shortly after Epic's non-attendance at its scheduled Rule 30(b)(6) deposition prevented Essociate from asking questions about its relationship with Social Assets. If there has been any undue delay, bad faith, or dilatory motive, it has been caused by Epic, not Essociate.

**B.      Neither Epic nor Kinetic Social will suffer undue prejudice.**

*Bausch* also asks whether there will be "undue prejudice to the opposing party by virtue of allowance of the amendment." *Bausch*, 630 F.3d at 562. There will be no such prejudice in this case. Social Assets was formed by several officers of Epic—accordingly, Social Assets can reasonably be expected to have knowledge of this lawsuit and access to all relevant materials. Also, Epic's former and current counsel Godfrey & Kahn has been involved in this case since the beginning, with only a one-month hiatus. Epic has not conducted any depositions. And at Epic's request, the Court recently extended all case deadlines by several months. Any arguments of unfair prejudice or undue delay would not be well-founded.

C.  **The proposed amendment is not futile.**

Further, the proposed amendment is not futile. Essociate proposes the addition of causes of action for successor liability and alter ego liability against Kinetic Social and claims for fraudulent transfer against Epic and Kinetic Social.

1.  **Essociate's proposed claim for imposition of successor liability against Social Assets is not futile.**

State law governs the doctrine of successor liability, and if established, subjects the successor entity of an infringing entity to liability for patent infringement. *See Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1380, 2010 U.S. App. LEXIS 18237 (Fed. Cir. 2010).

Epic and Social Assets are both Delaware entities. If the issue of successor liability is viewed as one of tort law, Delaware courts have ruled that the law of the place of the tort applies. *See Sellon v. General Motors Corp.*, D.Del., 521 F. Supp. 978, 981 (1981). Patent infringement is a tort. *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 Del. Ch. LEXIS 21, 16 n. 30, 2004 WL 5366102 (Del. Ch. Mar. 4, 2004). And both Epic and Social Assets operate in New York. (Linke Decl. at ¶¶ 18,19, Exs. S, T.) Accordingly, New York law applies to the question of successor liability.

Under New York law a corporation may be held liable for the torts of its predecessor if:

> (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 245, 451 N.E.2d 195, 464 N.Y.S.2d 437, 1983 N.Y. LEXIS 3122, (N.Y. 1983).

7

In this case, there is evidence indicating that Social Assets is merely continuing Epic's business. Both entities offer Internet marketing services, and both are run by the same people. On information and belief, Epic transferred assets to Social Assets for less than adequate consideration and in transactions that were not arm's-length. While there are questions of fact concerning the relationship between Epic and Social Direct, there is evidence indicating Social Assets is continuing Epic's business and that the two entities have collaborated in fraudulent transfers of assets. Transferring assets from one company to another to protect them from the first company's creditors is a fraudulent conveyance. Consequently, Essociate has a sound basis for claiming Social Assets is Epic's successor and naming Social Assets as an additional defendant.

2.   **Essociate's proposed claim for imposition of alter ego liability against Social Assets is not futile.**

Under Delaware law, separate legal entities are regarded as alter egos where: there is fraud or where one company is "in fact a mere instrumentality" of the other. *Trustees of Arden v. Unity Constr. Co.*, 2000 Del. Ch. LEXIS 7, 12 (Del. Ch. Jan. 26, 2000). Epic and Social Assets are probably alter egos under either of those standards.

Epic's former management created, and then fraudulently transferred Epic assets to Social Assets after the filing of this lawsuit. Then most or all of Epic's former management left Epic and took on identical positions with Social Assets. Epic is now be operating under the direction of Social Assets and Epic's former management—Epic is directing clients that owe it money to pay that money to Social Assets instead.

3.   **Essociate's proposed cause of action for fraudulent transfer is not futile.**

Under Delaware law, a claim for fraudulent transfer of assets exists under two circumstances:

- First, the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. 6 Del. C. § 1304(a)(1).

- Second, the debtor made the transfer (1) "without receiving a reasonably equivalent value in exchange for the transfer" and (2) either "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Roseton OL, LLC v. Dynegy Holdings, Inc.*, 2011 Del. Ch. LEXIS 113, 62, 2011 WL 3275965 (Del. Ch. July 29, 2011) (citing 6 Del. C. § 1304(a)(2)).

Both of these circumstances apply here. After Essociate filed this lawsuit, and after Epic incurred significant debt to other creditors, all or nearly all of Epic's former executive management formed a new, separate company, and transferred one of Epic's existing lines of business to that company. Now Epic is telling its creditors that it does not have sufficient funds to pay them most of the amount owed, and directing clients that owe it money to pay Social Assets instead.

And Essociate's claim against Social Assets as the fraudulent transferee is not futile because: "a defrauded creditor may seek recovery not only from the transferor but from a transferee as well." *Mitsubishi Power Sys. Ams., Inc. v. Babcock & Brown Infrastructure Group US, LLC*, 2009 Del. Ch. LEXIS 59, 16 (Del. Ch. Apr. 24, 2009).

### III. CONCLUSION

Epic is engaging in gamesmanship with its creditors via Social Assets LLC dba Kinetic Social. Social Assets is Epic's successor and alter ego and shares Epic's liability for patent infringement. And Epic appears to have fraudulently transferred to Social Assets an entire line of business in order to frustrate Essociate and other creditors. Essociate respectfully requests that the Court grant it leave to file a First Amended Complaint as attached hereto.

Dated this 6th day of August, 2012.

NEWMAN DU WORS LLP

/s/ Derek Linke
Derek A. Newman
Derek Linke
John Du Wors
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Telephone: (206) 274-2800
Facsimile: (206) 274-2801
*derek@newmanlaw.com*
*linke@newmanlaw.com*
*duwors@newmanlaw.com*

Attorneys for Plaintiff Essociate, Inc.