IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ESSOCIATE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-cv-00727-bbc |
| | § | |
| AZOOGLE.COM, INC., and | § | |
| EPIC MEDIA GROUP, INC., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' OPPOSITION
## TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

The Court should deny Essociate's motion, which seeks leave to amend the complaint to add a claim against Social Assets, LLC, and other "John Doe" defendants, based on several successor liability theories. Essociate has no new information that would justify adding new claims against new parties this late. The Court should deny Essociate's request because it is untimely and it would cause severe prejudice not only to Epic Media, but also to the new defendants Essociate proposes to bring into the case. *See, e.g., Sound of Music Co. v. Minnesota Mining & Manufacturing Co.*, 477 F.3d 910 (7th Cir. 2007) (motion for leave to amend may be denied if it is untimely and would cause unfair prejudice).

The Court should also deny Essociate's motion because the amendment would be futile. Epic Media has not engaged in any fraudulent transfer and Social Assets is not a mere continuation or instrumentality of Epic Media. Essociate's motion is based almost exclusively on rank speculation in an offensive internet blog post, the title of which Essociate would not even cite to this Court. *C.f., Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir.2001) (an amended pleading that could not survive summary judgment is futile).

**I.  Essociate was not diligent in seeking leave to amend its complaint.**

Consider the timing of the motion for leave to amend the complaint.  Essociate filed this suit on October 21, 2011.  The scheduling order set February 10, 2012 as the deadline to amend pleadings.  Dkt. No. 11.  Essociate's motion for leave to amend was not filed until August 6, 2012, nearly six months after the deadline.  In this Court, significant amendments to the complaint at this late date would require robust justification.

But the critical events involving Social Assets, LLC all occurred *before* the February 10, 2012 deadline to amend pleadings, as Essociate's own declaration shows.  Social Assets, LLC was formed on November 18, 2011, Dkt. No. 49-3 (Exhibit C).  Kinetic Social, the name under which Social Assets does business, issued a press release quoting Don Mathis on January 4, 2012.  Dkt. No. 49-1 (Exhibit A).  Social Assets filed for federal registration the Kinetic Social trademark on February 1, 2012.  Dkt. No. 49-5 (Exhibit E).  Had Essociate been paying attention to the activities of Epic Media personnel, including Don Mathis, it would have known about Kinetic Social long before now, and it should have investigated and amended its pleading by the original deadline.

Essociate tries to justify its delay with the claim that it "recently learned that defendant Epic Media Group, Inc. ('Epic') is apparently refusing to pay its debts and directing its clients to pay another entity called 'Kinetic Social' instead of Epic."  The source of this information is a June 6, 2012 internet blog post by Pace Lattin, entitled "How Epic Media Fucked Affiliates."  Dkt. No. 49-12 (Exhibit L).  Epic Media will debunk the misinformation in this blog post in section III below, but the timing of this article is critically important.  The posting was made on

June 6; Essociate sought leave to amend on August 6, two full months later. That two-month delay alone demonstrates Essociate's undue delay in seeking the amendment.[1]

Essociate tries to blame Epic Media for its delay in bringing this motion, but its argument is misleading. Essociate contends that Epic Media's failure to appear at the Rule 30(b)(6) deposition noticed for July 6 prevented Essociate from asking questions about the relationship between Epic Media and Social Assets. But Essociate's Rule 30(b)(6) notice did not include any topics specifically directed at Kinetic Social or Social Assets.[2] Dkt. No. 49-17 (Exhibit Q). In fact, counsel for Essociate has yet to seek written discovery concerning Kinetic Social or Social Assets. Even if the Pace Lattin blog post were enough to justify an amendment of the complaint, Essociate has no excuse for sitting on it in silence for two months.

**II. Epic Media, Social Assets, and multiple as-yet-unnamed defendants will suffer severe prejudice if the amendment is allowed.**

Essociate wrongly minimizes the prejudice that would be faced by Epic Media if the amendment were allowed. Essociate cannot mask the very significant impact its new claims would have on this case. Essociate does not seek merely to add another defendant accused of the same infringement. Rather, the amended complaint adds three new causes of action: "successor liability," "alter ego liability" and "fraudulent transfer." The amended complaint also contemplates adding multiple "John Doe" defendants who, Essociate alleges, have improperly received assets and corporate opportunities that rightfully belonged to Epic Media and its creditors. These new claims would necessarily open up vast new areas of discovery reaching far

---

[1] The June 6 date is suspect, too. The Performance Industry Insider blog had already posted on May 11, 2012 that personnel from Epic Media had "separated parts of the company to form a new entity called Kinetic Social." Dkt. No. 49-14 (Exhibit N). Had Essociate been diligent, it would have sought written discovery regarding the relationship between Epic Media and Kinetic Social in May. So actually Essociate waited at least about three months to bring its amendment after it learned about Kinetic Social and its relationship to Epic Media.

[2] The only arguable Rule 30(b)(6) topic having anything to do with Social Assets would have been topic no. 15, regarding "financial information relating to You." Dkt. No. 49-17 (Exhibit Q). Such a topic would not have notified Epic Media that it should be prepared to provide testimony regarding the relationship between Social Assets and Epic Media.

beyond the scope of the single infringement claim in the operative pleading that has governed this case for ten months.  Epic Media has made no secret of its financial difficulties and its efforts to deal responsibly with its debts.  Declaration of David Graff (filed with this brief and referred to as "Graff Decl.") ¶ 6.  Essociate's proposed amendment to the pleadings could make every aspect of Epic Media's debt workout an issue in this case.

Both sides have already sought and provided significant written discovery.  Peterson Decl. ¶ 11.  Thus, the parties are now well along in discovery.  Epic Media is preparing for the scheduled October depositions and the November 5 expert witness disclosure deadline.  There is already a vast amount of evidence to manage in this case, and Epic Media can ill afford to be diverted to defending Essociate's vast, but unfounded, allegations that it has engaged in financial misdeeds that have nothing specifically to do with the infringement allegations in this case.

Essociate's delay in bringing the amendment is particularly prejudicial in light of the activities that took place in the two months since the Pace Lattin blog post.  Immediately after Godfrey & Kahn appeared as lead counsel for the defendants on July 5, 2012, Mr. Peterson informed the Court of the defendants' intent to seek an amendment to the scheduling order (Dkt. No. 41) and contacted counsel for Essociate to negotiate one.  Declaration of James D. Peterson (filed with this brief, and referred to as "Peterson Decl.") ¶¶ 4-6.  Mr. Peterson worked out a stipulated motion to amend the remaining dates in the scheduling order, which was filed on July 10, 2012.  *Id.*, ¶ 8. At no time in the discussions of the case schedule did counsel for Essociate mention the need to amend the pleadings, *id.*, ¶ 10, despite the fact that Essociate learned about Kinetic Social's activities at least as early as June 6.  Over the next week, counsel for the parties worked out a schedule for fact depositions, to be held in Chicago in the first two weeks of October.  *Id.*, ¶ 9.  Again, counsel for Essociate did not mention any need to take discovery concerning Social Assets potential successor liability.  Counsel for Epic Media agreed to the

4

deposition schedule and arranged for the appearance of its witnesses under the impression that those depositions would concern the range of issues relevant to the infringement case, not a claim for successor liability. Only once Essociate had secured the Epic Media's commitment to the October depositions did Essociate move to amend the complaint, thereby significantly expanding the scope of depositions.

### III. Essociate's pleading is groundless and therefore futile.

The Court should also deny Essociate's motion for leave to amend its complaint as futile because Essociate's amended claim could not survive a motion for summary judgment. *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir.2001). Even though discovery is still open, Essociate should be able to point to a sound legal theory supported by some source of admissible evidence, but it has not done so.

Essociate proposes to add three causes of action to support a successor liability, but each cause of action relies on the same two core allegations: that Social Assets is a "mere continuation" or "mere instrumentality" of Epic Media; and that Epic Media has fraudulently transferred assets to Social Assets. Neither of these allegations holds water.

#### A. Social Assets is not a mere continuation or instrumentality of Epic Media.

Essociate does not spend much energy setting out the basis for its allegation that Social Assets is a "mere continuation" or "mere instrumentality" of Epic Media. Apparently, Essociate contends that because Social Assets is in the same general business and has some of the same management as Epic Media, Social Assets is liable for Epic Media's debts.[3] But the cases cited by Essociate do not support this theory.

---

[3] Essociate cites the Connexus litigation as contributing to Epic Media's financial difficulties, Essociate Brief at 4, but it does not address the Connexus litigation in its argument. Connexus Corporation, another internet marketing firm, was acquired by Epic Media in 2010. At the time of the acquisition, Connexus was already involved in litigation, which was resolved by a confidential settlement and a stipulated judgment. Graff Decl. ¶ 9. Although the

Common management not does provide a basis for a successor liability claim, a point made clear in *Trustees of Arden v. Unity Construction Company*, 2000 Del. Ch. LEXIS 7 (Del. Ch. Jan. 26, 2000), the single authority Essociate cites for its "alter ego" cause of action. Essociate Brief at 8.  As the Delaware Chancery court put this basic point, "[o]f course, common management of two entities does not, by itself, justify piercing the corporate veil." *Id*. at *12. Neither does common ownership: "The undisputed fact that Unity [one co-defendant] and BGALLC [another co-defendant] have similar ownership is not sufficient to justify disregarding their business forms." *Id*. at *13.  Thus, Essociate cannot justify imposing successor liability on Social Assets merely because some of the management of Epic Media now works for Social Assets or because the two entities are under common ownership.

Essociate's "mere continuation" notion fares no better.  In support of its "successor liability" cause of action, Essociate again cites a single case, *Schumacher v. Richards Shear Co*., 59 N.Y.2d 239, 451 N.E.2d 195 (N.Y. 1983), which it quotes to set out the circumstances under which a successor corporation may be liable for the obligations of its predecessor.  Essociate Brief at 7.  Essociate then suggests that Social Assets is merely continuing Epic Media's business because it is in the same line of business and is run by the same people.  But that is not the sense in which "mere continuation" was used in *Schumacher*.  As the Court of Appeals of New York explained, "the [mere continuation] exception refers to corporate reorganization, however, where only one corporation survives the transaction; the predecessor corporation must be extinguished." *Id*. at 245.  Because the defendant entity survived the purchase, the court rejected the successor liability claim.  *Id*.  As in *Schumacher*, the "mere continuation" doctrine cannot not

---

litigation contributed to Epic Media's financial difficulties, the creation of Social Assets occurred well before the stipulated judgment and it does not reflect any intention to avoid Epic Media's obligations.  *Id*.

apply to Social Assets because Epic Media remains a going concern and an existing corporate entity.  Graff Decl. ¶ 7.

Social Assets is in a different line of business from Epic Media.  *See* Graff Decl. ¶ 4 (providing a succinct explanation of the two businesses).  Epic Media operated an affiliate network; Social Assets does not.  *Id*.  Social Assets is a separate corporate entity, and it is not Epic Media' "successor" in any sense.  There is absolutely no basis for imposing liability on Social Assets under Essociate's "successor liability" or "alter ego" causes of action.

> **B.     Epic Media has not transferred assets to Social Assets, fraudulently or otherwise.**

Essociate's allegation that Epic Media has fraudulently transferred assets to Social Assets is based entirely on the June 6 blog post by Pace Lattin.  This allegation fails because it is merely conclusory and there is simply no admissible evidence to support such a claim.  Such a bald allegation of wrongdoing would not survive either a motion to dismiss or a motion for summary judgment.

Pace Lattin has no personal knowledge of Epic Media's operations.  Graff Decl. ¶ 10. Thus, the Pace Lattin blog post would constitute inadmissible hearsay, even if it cited sources of information.  But the more fundamental problem is that the Pace Lattin blog post does not identify any source of information concerning transfers of assets from Epic Media.  Rather, the blog offers only Pace Lattin's "belief" and "suspicion" as to why Epic Media has not declared bankruptcy:

> So why isn't Epic doing a bankruptcy? Simple: I believe that this scheme that they planned could not currently survive bankruptcy court. There is a principle called fraudulent conveyance, which in the case of a bankruptcy means basically a company cannot transfer profitable assets out of a company in order to protect them from the debtors of the original company. If I am right about my suspicions, what they did is possibly illegal if the purpose was to keep from paying debtors.

7

Dkt. No. 49-12 (Exhibit L). This blog post simply does not contain, or even suggest the existence of, admissible evidence that Epic Media fraudulently transferred assets to Social Assets. Lattin's speculations are false. Epic Media has not transferred any assets, fraudulently or otherwise, to Social Assets, as shown by the declaration of David Graff, general counsel to Epic Media and Social Assets. Graff Decl. ¶ 8. Epic Media is not instructing its clients to pay Social Assets. *Id.*, ¶ 5.

Epic Media recognizes this matter is before the Court on a motion for leave to amend, and not on a decision on the merits. But the complete absence of any legitimate support for Essociate's allegation of a fraudulent transfer must count against Essociate as the Court determines whether the amendment is in the interests of justice.

## Conclusion

The Court should deny Essociate's motion to amend its complaint. In the next weeks, Epic Media and its counsel must prepare for extensive depositions and the disclosure of expert reports. The radical expansion of this case to include successor liability claims against multiple new defendants will impose severe unfair prejudice on Epic Media and those new defendants. Such a significant amendment at this point in the case would require substantial justification, and Essociate should have sought to develop these allegations much earlier if it wanted to press them now. The baseless speculations of an internet blogger do not justify the amendment of the complaint, and this Court should deny Essociate's motion.

Dated: August 20, 2012 Respectfully submitted,

**Godfrey & Kahn, S.C.**

*s/James D. Peterson*
James D. Peterson
Bryan J. Cahill
Jennifer L. Gregor

One East Main Street
P.O. Box 2719
Madison, Wisconsin 53701
608-257-3911
608-257-0609 *Facsimile*

*Attorneys for defendants*
*Azoogle.com, Inc and Epic Media Group, Inc.,*
*(f/k/a Azoogle.com, Inc.)*

8338298_1