UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

ESSOCIATE, INC.,

        Plaintiff,

        v.

AZOOGLE.COM, INC., EPIC MEDIA GROUP, INC., SOCIAL ASSETS LLC d/b/a KINETIC SOCIAL, and DOES 1-10,

        Defendants.

Case No. 11-CV-727

**ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF DEFENDANTS**

Defendants, Epic Media Group, Inc., (formerly known as Azoogle.com, Inc.), and Social Assets LLC d/b/a/ Kinetic Social (collectively "Defendants"), state as follows for their Answer to the First Amended Complaint of Plaintiff Essociate, Inc. ("Essociate").

**NATURE OF THE ACTION**

1.    Essociate is suing Azoogle and Epic for patent infringement under 35 U.S.C. § 271.

ANSWER: Admitted that Essociate is suing Azoogle.com, Inc., ("Azoogle"), and Epic Media Group, Inc., ("Epic") for patent infringement.

2.    Essociate is suing Social Assets LLC because it is Epic's successor.

ANSWER: Admitted that Essociate is suing Social Assets LLC, but denied that Social Assets LLC is Epic's successor.

3.    Essociate is suing Social Assets and Does 1–10 because they are Epic's alter egos.

ANSWER: Admitted that Essociate is suing Social Assets and Does 1-10, but the remaining allegations of this Paragraph are denied.

4.     Essociate is also suing Epic, Social Assets, and Does 1–10 because Epic fraudulently transferred and continues to fraudulently transfer assets to Social Assets and Does 1-10 in an attempt to defraud Epic's creditors, including Essociate.

ANSWER:  Admitted that Essociate is suing Epic, Social Assets, and Does 1-10.  The remaining allegations of this Paragraph are denied.

## PARTIES

5.     Plaintiff Essociate, Inc. is a Delaware corporation with its principal place of business in California.

ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5, and on that basis deny them.

6.     Essociate is the owner of U.S. Patent No. 6,804,660 ("the '660 Patent"), entitled "System Method and Article of Manufacture for Internet Based Affiliate Pooling", issued October 12, 2004 (copy attached as Exhibit A).

ANSWER:  Defendants admit that, on its face, U.S. Patent No. 6,804,660 (the "'660 Patent") is entitled "System Method and Article of Manufacture for Internet Based Affiliate Pooling" and has an issue date of October 12, 2004.  Defendants further admit that, on its face, the '660 Patent lists Essociate as the assignee.  Defendants are without knowledge or information sufficient to form a belief as to whether Essociate is the owner of the '660 Patent, and on that basis deny that allegation.  Defendants deny that the '660 Patent was duly and legally issued after a full and fair examination, and deny that Exhibit A to the First Amended Complaint is a true and correct copy of the '660 Patent.

7.     Essociate is the owner of the entire right, title, and interest in the '660 Patent and has standing to sue for all past, present, and future infringement of the '660 Patent.

ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7, and on that basis deny them.

8.     Upon information and belief, Defendant Epic Media Group, Inc. is a Delaware corporation with its principal business address at 512 Seventh Avenue, Twelfth Floor, New York, New York 10018. Upon information and belief, Epic Media Group, Inc. transacts business

2

and has provided to customers in this judicial district and throughout the State of Wisconsin products and/or services that infringe and/or induce infringement of, and/or contribute to infringement of, one or more claims of the '660 Patent.

ANSWER: Admitted that Defendant Epic Media Group, Inc. is a Delaware corporation. Further, Defendants do not deny that Epic Media Group, Inc. has transacted business in this judicial district and the State of Wisconsin. Defendants deny the remaining allegations in Paragraph 8.

9. Upon information and belief, Defendant Azoogle.com, Inc. is an Ontario, Canada corporation with its principal business address at 60 Columbia Way #310, Markham, Ontario L3R0C9, Canada. Upon information and belief, Azoogle.com, Inc. transacts business and has provided to customers in this judicial district and throughout the State of Wisconsin products and/or services that infringe and/or induce infringement of, and/or contribute to infringement of, one or more claims of the '660 Patent.

ANSWER: Defendants deny the allegations set forth in Paragraph 9 of the Complaint. In or around 2010, Defendant Azoogle.com, Inc. changed its name to Epic Media Group, Inc. Because Defendant Azoogle.com, Inc. and Defendant Epic Media Group, Inc. are the same entity, all of Epic Media Group, Inc.'s responses and defenses apply to Azoogle.com, Inc., and no further Answer or Responsive Pleading is required or forthcoming.

10. Upon information and belief, Defendants Epic and Azoogle have and/or continue to manufacture, import into the United States, sell, offer for sale, and/or use online affiliate network marketing software that infringes one or more claims of the '660 Patent including, without limitation, claims 1, 10, 15, 23, 28, and 36. Upon information and belief, such software products have been offered and are offered for sale to customers in this judicial district and throughout the State of Wisconsin.

ANSWER: Defendants deny the allegations set forth in Paragraph 10.

11. Upon information and belief, Defendant Social Assets LLC is a Delaware limited liability company with its principal business address in New York, New York. Upon information and belief, Social Assets LLC is a mere continuation and alter ego of Epic Media Group, and Epic Media Group and Social Assets LLC collaborated in one or more fraudulent transfers of assets between Epic Media and Social Assets for the purpose of preventing creditors, including Essociate, from collecting funds from Epic Media. Consequently, Social Assets LLC is liable for Epic Media's infringement of the '660 Patent as Epic Media's successor.

ANSWER: Defendants deny the allegations set forth in Paragraph 11.

12. Essociate is unaware of the true names and capacities of the defendants identified as Does 1-10 and therefore sues those defendants under fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is the alter ego of Epic, is responsible for the fraudulent transfer of Epic's assets to Social Assets, and/or is itself the transferee of fraudulently transferred Epic assets. These fictitiously named defendants, along with Epic, Azoogle, and Social Assets, are referred to collectively as "Defendants".

ANSWER: Defendants deny the allegations set forth in Paragraph 12.

## JURISDICTION AND VENUE

13. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

ANSWER: If Essociate has standing to assert the '660 Patent in its name, Defendants admit that this Court would have subject matter jurisdiction over this action.

14. Personal jurisdiction over Defendants is proper in this court. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and/or 1400(b).

ANSWER: Defendants do not deny that they are subject to personal jurisdiction in this Court. Defendants do not deny that venue is proper in this judicial district, but deny that this District is the most convenient forum for Essociate's action.

## ESSOCIATE'S BUSINESS AND PATENTED TECHNOLOGY

15. Michael Landau and Evan Horowitz founded Essociate to develop and provide to customers new and more effective affiliate marketing products and services.

ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15, and on that basis deny them.

16. As a testament to the innovations of Messrs. Landau and Horowitz, they were issued the '660 Patent for the novel affiliate marketing technology they invented.

ANSWER: Defendants admit that, on its face, the '660 Patent lists Messrs. Landau and Horowitz as the inventors. Defendants further admit that, according to the United States Patent and Trademark Office's ("USPTO") records, it appears that the '660 Patent issued on

4

October 12, 2004.  Defendants deny that the '660 Patent was duly and legally issued after a full and fair examination.  Defendants deny any remaining allegations set forth in Paragraph 16.

17. Essociate owns the '660 patent and provides services to many customers throughout the United States based on the technology disclosed in the '660 Patent.

ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17, and on that basis deny them.

18. Essociate is still owned and controlled by Messrs. Landau and Horowitz.

ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18, and on that basis deny them.

## DEFENDANTS' INFRINGEMENT OF THE '660 PATENT

19. Upon information and belief, Defendant Epic and Azoogle have infringed and continue to infringe the '660 Patent under 35 U.S.C. § 271(a) by making, using, modifying, upgrading, performing quality control, and providing support for their affiliate marketing software and/or hardware and/or other products and/or services provided by means of that software and/or hardware. The accused products and services include the online affiliate marketing network operated by Defendants at <<http://www.epicdirectnetwork.com>> and previously at <<http://www.azoogleads.com>>.

ANSWER:  Defendants admit that Essociate has accused the online affiliate network operated by Epic and Azoogle of infringing the '660 Patent, but deny the allegations set forth in Paragraph 19.

20. Upon information and belief, Defendants have also been and are directly infringing the '660 Patent under 35 U.S.C. § 271(a) by selling, offering for sale, and/or importing into the United States affiliate marketing software and/or other products and/or services that infringe one or more claims of the '660 patent.

ANSWER:  Defendants deny the allegations set forth in Paragraph 20.

21. Upon information and belief, Defendants' customers and other users of Defendants' software and other products and the services provided by means of that software and/or hardware and other products, have been and are directly infringing one or more claims of the '660 Patent under 35 U.S.C. § 271(a).

ANSWER:  Defendants deny the allegations set forth in Paragraph 21.

22. Upon information and belief, Defendants have been and are actively inducing infringement of one or more claims of the '660 Patent under 35 U.S.C. § 271(b) by providing to customers, including customers in this judicial district, their affiliate marketing software and other products, as well as services provided by means of their affiliate marketing software and other products, along with instructions and directions that result in the use of the methods, computer programs, and systems disclosed and claimed in the '660 Patent. On information and belief, Defendants knew, or should have known, that their customers and other users of their services would use Defendants' affiliate marketing software and other products to infringe the '660 Patent and intended such infringement.

ANSWER:  Defendants deny the allegations set forth in Paragraph 22.

23. Upon information and belief, Defendants have been and are contributorily infringing one or more claims of the '660 Patent under 35 U.S.C. § 271(c) by making, selling, and/or offering for sale to customers, including customers in this judicial district, their affiliate marketing software and other products, as well as services provided by means of their affiliate marketing software and other products. Defendants' affiliate marketing software and other products are each a material part of the invention claimed in the '660 patent, are not staple articles or commodities of commerce, and have no substantial non-infringing use. Upon information and belief, Defendants knew, or should have known, that their affiliate marketing software and other products were especially made or adapted for an infringing use.

ANSWER:  Defendants deny the allegations set forth in Paragraph 23.

24. Defendants' infringement, contributory infringement, and inducement to infringe the '660 Patent has been willful and has deliberately injured and will continue to injure Essociate unless and until the Court enters a preliminary and permanent injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, importation, sale, and/or offer for sale of products that infringe the '660 Patent.

ANSWER:  Defendants deny the allegations set forth in Paragraph 24.

**FIRST CAUSE OF ACTION**
**INFRINGEMENT OF U.S. PATENT NO. 6,804,660**

25. Essociate herein incorporates by reference Paragraphs 1–23 *[sic]*.

ANSWER:  Defendants incorporate by reference their answers to Paragraphs 1-24.

26. Defendants have infringed and are infringing the '660 Patent by making, using, offering for sale, and selling in the United States, without authority, products and services that infringe one or more claims of the '660 Patent.

ANSWER:  Defendants deny the allegations set forth in Paragraph 26.

27. Defendants' infringement of the '660 Patent is willful and deliberate, justifying an increase of damages of up to three times under 35 U.S.C. § 284.

ANSWER:  Defendants deny the allegations set forth in Paragraph 27.

28.     Defendants' infringement of the '660 Patent is exceptional and entitles Essociate to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

ANSWER:  Defendants deny the allegations set forth in Paragraph 28.

29.     Defendants' acts of infringement have caused damage to Essociate, and Essociate is entitled to recover from Defendants compensation as a result of Defendants' wrongful acts in an amount subject to proof at trial, injunctive relief, and such other relief as may be appropriate.

ANSWER:  Defendants deny the allegations set forth in Paragraph 29.

## SECOND CAUSE OF ACTION
## SUCCESSOR LIABILITY
### (Against Social Assets, LLC)

30.     Essociate herein incorporates by reference Paragraphs 1–29.

ANSWER:  Defendants incorporate by reference their answers to Paragraphs 1-29.

31.     Social Assets is a successor to Epic.

ANSWER:  Defendants deny the allegations set forth in Paragraph 31.

32.     Epic has committed the tort of patent infringement as alleged herein.

ANSWER:  Defendants deny the allegations set forth in Paragraph 32.

33.     Social Assets is liable for Epic's torts because: Social Assets is a mere continuation of Epic, or in the alternative, the transaction in which Epic transferred assets to Social Assets was entered into fraudulently to escape Epic's liability for Epic's torts.

ANSWER:  Defendants deny the allegations set forth in Paragraph 33.

34.     Therefore, Social Assets is liable as a successor for Epic's torts, including its infringement of Essociate's '660 Patent.

ANSWER:  Defendants deny the allegations set forth in Paragraph 34.

## THIRD CAUSE OF ACTION
## ALTER EGO LIABILITY
### (Against Defendant Epic Media Group, LLC, Social Assets, LLC, and Does 1-10)

35.     Essociate herein incorporates by reference Paragraphs 1–34.

ANSWER:  Defendants incorporate by reference their answers to Paragraphs 1-34.

36. Social Assets and Does 1–10 control Epic to such a degree that Epic has become a mere instrumentality for Social Assets and Does 1–10.

ANSWER: Defendants deny the allegations set forth in Paragraph 36.

37. Social Assets and Does 1–10 have committed fraud through Epic by transferring assets and corporate opportunities away from Epic at a time when Epic is undercapitalized in an attempt to defraud Epic's creditors.

ANSWER: Defendants deny the allegations set forth in Paragraph 37.

38. Social Assets and Does 1–10 have thereby caused unjust loss or injury to Essociate.

ANSWER: Defendants deny the allegations set forth in Paragraph 38.

39. Therefore, Social Assets and Does 1–10 are alter egos of Epic and are liable for Epic's torts, including its infringement of Essociate's '660 Patent.

ANSWER: Defendants deny the allegations set forth in Paragraph 39.

## FOURTH CAUSE OF ACTION
## FRAUDULENT TRANSFER
### (Against Defendants Epic Media Group, LLC, Social Assets, LLC, and Does 1-10)

40. Essociate herein incorporates by reference Paragraphs 1–39.

ANSWER: Defendants incorporate by reference their answers to Paragraphs 1-39.

41. Epic has transferred and is continuing to transfer assets to Social Assets and Does 1–10.

ANSWER: Defendants admit that Epic Media Group, Inc. has transferred certain assets to Social Assets, LLC, but deny that such transfers were fraudulent and deny the remaining allegations of this Paragraph.

42. Those transfers were and are fraudulent under 6 Del. C. § 1304(a)(1) because they were made with the actual intent to hinder, delay, or defraud Essociate and other creditors of Epic.

ANSWER: Defendants deny the allegations set forth in Paragraph 42.

43. That actual intent is demonstrated by, without limitation, the following factors: (1) Epic's transfers to Social Assets and Does 1–10 were to insiders, namely the former executive management of Epic; (2) the transfers were concealed; (3) shortly before the transfers was *[sic]* made, Epic had been sued by Essociate for patent infringement; (4) the consideration

8

Epic received for the transfers was not reasonably equivalent to the value of the assets transferred to Social Assets and Does 1–10; (5) Epic was insolvent either before or shortly after the transfers were made; and (6) the transfers were made either shortly before or shortly after a substantial debt was incurred by Epic.

ANSWER: Defendants deny the allegations set forth in Paragraph 43.

44. Additionally those transfers were and are fraudulent under 6 Del. C. § 1304(a)(2)(a) because Epic made the transfers without receiving a reasonably equivalent value in exchange for the transfer, and Epic was engaged in business for which Epic's remaining assets were unreasonably small in relation to that business.

ANSWER: Defendants deny the allegations set forth in Paragraph 44.

45. Additionally those transfers were and are fraudulent under 6 Del. C. § 1304(a)(2)(b) because Epic made the transfers without receiving a reasonably equivalent value in exchange for the transfer, and Epic intended to occur, or believed or reasonably should have believed that it would incur, debts beyond Epic's ability to pay those debts as they became due.

ANSWER: Defendants deny the allegations set forth in Paragraph 45.

## DEMAND FOR JURY TRIAL

Defendants demand a jury trial on all issues so triable.

## AFFIRMATIVE DEFENSES

Without admitting or acknowledging that they bear the burden of proof as to any of them, Defendants assert the following affirmative defenses:

### First Affirmative Defense

1. The Complaint fails to state a claim upon which relief can be granted and/or fails to plead the allegations with sufficient particularity.

### Second Affirmative Defense

2. Epic and Azoogle have not infringed (either individually or jointly), contributed to the infringement of, or induced the infringement of any valid, enforceable claim of the '660 Patent, either literally or under the doctrine of equivalents.

**Third Affirmative Defense**

3. The asserted claims of the '660 Patent are invalid and/or void because they are anticipated by the prior art or otherwise fail to comply with the requirements of 35 U.S.C. §§ 100, *et seq.*, including one or more of the following: 35 U.S.C. §§ 101, 102, 103, and/or 112.

**Fourth Affirmative Defense**

4. Essociate's claims are barred in whole or in part by the equitable doctrines of unclean hands, estoppel, implied license, *in parti delicto*, waiver, acquiescence, and/or other equitable doctrines.

**Fifth Affirmative Defense**

5. On information and belief, Essociate's claim for damages, if any, are limited to the extent that Essociate has failed to mark its products, provide notice, or otherwise meet the requirements of 35 U.S.C. § 287 and Epic and Azoogle are not liable for any acts alleged to have occurred before they had notice of the '660 Patent and the allegations in the Complaint.

**Sixth Affirmative Defense**

6. The '660 Patent is invalid in whole or in part for double patenting.

**Seventh Affirmative Defense**

7. Epic and Azoogle have engaged in all relevant activities in good faith, thereby precluding Essociate, even if it prevails, from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. § 285.

**Eighth Affirmative Defense**

8. By reason of the prior art and/or statements and representations made to and by the United States Patent & Trademark Office ("USPTO") during the prosecution of the

applications that led to the issuance of the '660 Patent, this patent is so limited that none of its claims can be properly construed as covering any activity of Epic or Azoogle.

### Ninth Affirmative Defense

9. By reason of Essociate's unreasonable and inexcusable seven year delay in filing suit, and the resulting material prejudice to Epic and Azoogle on account of said delay, the '660 Patent is unenforceable, in whole or in part, due to laches.

### Tenth Affirmative Defense

10. On April 27, 2001, Michael Landau and Evan Horowitz signed a declaration declaring under penalty of perjury that they were joint inventors of the invention disclosed and claimed in U.S. Patent App. No. 09/846,159, which issued as the '660 Patent.

11. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Messrs. Landau and Horowitz were business partners prior to April 27, 2001.

12. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Michael Landau was deposed on January 6, 2010. In that deposition, Landau testified that he did not know of any contribution made by Evan Horowitz to the invention of the '660 Patent. When asked why Evan Horowitz was named as an inventor on the '660 Patent, Mr. Landau stated that the reason was that Mr. Horowitz was his business partner.

13. Identifying the proper inventors in a patent application is material to patentability.

14. Messrs. Landau and Horowitz, their attorneys, and others associated with them had a duty to inform the United States Patent and Trademark Office ("USPTO") of the proper inventors while the application for the '660 Patent was pending at the USPTO.

15. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Messrs. Landau and Horowitz, their attorneys, and others associated with them intentionally named Evan Horowitz as an inventor with intent to mislead the USPTO.

16. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Messrs. Landau and Horowitz, their attorneys, and others associated with them committed inequitable conduct, rendering the '660 Patent unenforceable.

### Eleventh Affirmative Defense

17. On October 16, 2001, Michael Landau and Evan Horowitz filed a "Petition to Make Special" with the USPTO for the application that resulted in the '660 Patent. Under USPTO rules, Messrs. Landau and Horowitz were required to disclose to the USPTO all known prior art.

18. In their Petition to Make Special, Messrs. Landau and Horowitz failed to disclose the "Xpays System," an Internet affiliate marketing system, which is a material prior art reference. On information and belief, based on the pleadings set forth in another matter, the Xpays System was owned, controlled, and used by Messrs. Landau and Horowitz, and the Xpays system was not cumulative to the prior art that Messrs. Landau and Horowitz submitted to the USPTO.

19. On information and belief, based on the pleadings set forth in another matter, Defendants allege that the Xpays System was developed by Michael Landau and publicly used by Xpays, LLC for more than one year before the priority date of the '660 Patent, May 1, 2000. The Xpays System is thus prior art to the '660 Patent under, *inter alia*, 35 U.S.C. § 102(b). Both Michael Landau and Evan Horowitz knew that the Xpays System was publicly used more than one year before the '660 Patent's priority date.

20. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Messrs. Landau and Horowitz, their attorneys, and others associated with them intentionally failed to inform the USPTO of the Xpays System with an intent to mislead the USPTO.

21. On information and belief, based on the pleadings set forth in another matter, Defendants allege that Messrs. Landau and Horowitz, their attorneys, and others associated with them committed inequitable conduct, rendering the '660 Patent unenforceable.

## Other Defenses Reserved

22. Defendants reserve all affirmative defenses available under Federal Rule of Civil Procedure 8(c), and any other defenses, at law or in equity, that may be available now or in the future based on discovery or any other factual investigation in this case, including, but not limited to, additional undisclosed prior art references known to the inventors and withheld from the USPTO with intent to deceive that render the '660 Patent unenforceable due to inequitable conduct.

## **COUNTERCLAIMS**

For its counterclaims against Essociate, Epic Media Group, Inc., (formerly known as Azoogle.com, Inc.), ("Epic") alleges as follows:

1. This is an action for Declaratory Relief for which this Court has jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201. Essociate, Inc., ("Essociate"), has submitted to personal jurisdiction and to venue in this District by filing this action. Thus, venue for Epic's counterclaim may be proper in this district, although other venues may be more convenient to the parties.

2. Epic Media Group, Inc. is a Delaware corporation, with its principal place of business at 512 Seventh Avenue, Twelfth Floor, New York, New York 10018.

3. Upon information and belief, Essociate is a Delaware corporation with its principal place of business in California.

4. By its Complaint, Essociate purports to assert a claim against Epic for infringement of the '660 Patent.

5. Epic denies Essociate's claim of infringement of the '660 Patent. Epic contends that the asserted claims of the '660 Patent are invalid and unenforceable against it.

6. An actual controversy has arisen and now exists between Epic and Essociate as to the non-infringement, invalidity, and/or unenforceability of the '660 Patent.

## Count One – Declaration of Non-Infringement

7. Epic restates and incorporates by reference each of the allegations of Counterclaim Paragraphs 1–6.

8. Essociate claims that it is the sole owner of the '660 Patent. Essociate claims that it has standing to sue for infringement of the '660 Patent.

9. Essociate has asserted that Epic is infringing the '660 Patent and has identified as the accused system the online affiliate network operated by Epic and formerly operated by Azoogle.

10. Epic denies that its software or any other products sold, offered for sale, and/or used by Epic infringes any valid claim of the '660 Patent.

11. Epic seeks and is entitled to a declaration that its products do not directly infringe (either individually or jointly), has not induced infringement of, and has not contributed to the infringement of any valid claim of the '660 Patent.

## Count Two – Declaration of Patent Invalidity

12. Epic restates and incorporates by reference each of the allegations of Counterclaim Paragraphs 1–6.

13. Epic asserts that the claims of the '660 Patent are invalid pursuant to one or more of the provisions of Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101 (lack of patentable subject matter), 102 (anticipation), 103 (obviousness), and/or 112 (indefiniteness and failure to satisfy the written description requirement and/or lack of enablement).

14. Epic is entitled to a declaration that the claims of the '660 Patent are invalid pursuant to one or more of the provisions of Title 35 of the United States Code, including, but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Count Three – Declaration of Patent Unenforceability

15. Epic restates and incorporates by reference each of the allegations of Affirmative Defense Paragraphs 10–21 and Counterclaim Paragraphs 1–6.

16. Epic asserts that the claims of the '660 Patent are unenforceable, in whole or in part, due to laches.

17. Epic asserts that the claims of the '660 Patent are unenforceable due to inequitable conduct for intentionally misleading the USPTO regarding inventorship.

18. Epic asserts that the claims of the '660 Patent are unenforceable due to inequitable conduct for intentionally misleading the USPTO by withholding known, material prior art.

19. Epic seeks and is entitled to a declaration that the '660 Patent is unenforceable, in whole or in part, due to laches and/or inequitable conduct.

### DEMAND FOR JURY TRIAL

Epic requests a trial by jury of all issues in this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Epic prays for the following relief:

1. Judgment declaring that Epic and Azoogle have not infringed (either individually or jointly), contributed to the infringement of, or induced infringement of the '660 Patent, and further that Epic and Azoogle have not willfully infringed, contributed to the infringement of, or induced infringement of the '660 Patent;

2. Judgment declaring that the '660 Patent is invalid, void, and/or unenforceable;

3. Judgment that Essociate shall take nothing by this action;

4. Denial of Essociate's request for injunctive relief;

5. Denial of Essociate's request to recover any damages, enhanced damages, costs, expenses, attorneys' fees, pre-judgment interest, or post-judgment interest from Epic;

6. Denial of Essociate's request for other relief from Epic;

7. Denial of Essociate's request for a judgment that the above-captioned matter is an exceptional case; and

8. Judgment awarding Epic the costs of suit, attorneys' fees, and any other relief this Court deems just and proper.

Dated: October 22, 2012.

Respectfully submitted,

*s/ Jennifer L. Gregor*

James D. Peterson
Jennifer L. Gregor
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Post Office Box 2719
Madison, WI 53701-2719
Phone: 608-257-3911
Fax: 608-257-0609
Email: jpeterson@gklaw.com
jgregor@gklaw.com

Attorneys for Defendants, Epic Media Group, Inc. (f/k/a Azoogle.com, Inc.) and Social Assets LLC d/b/a/ Kinetic Social.

8484035_2

Case: 3:11-cv-00727-bbc Document #: 63 Filed: 10/22/12 Page 17 of 17